**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William J. Carey

   v.                                       Civil No. 07-cv-380-SM

Larry Blaisdell, Warden,
Northern New Hampshire
Correctional Facility

**O R D E R**

Before the Court is William Carey's petition for a writ of habeas corpus (document no. 1), filed pursuant to 28 U.S.C. § 2254. The matter is before me for preliminary review to determine whether or not the claims raised in the petition are facially valid and may proceed. See Rule 4 of the Rules Governing Section 2254 cases in the United States District Courts ("§ 2254 Rules"); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate judge to preliminarily review pro se prisoner filings pursuant to 28 U.S.C. § 1915A).

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the

magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

William Carey was convicted of stalking, after a jury trial in which he eschewed the representation of counsel and instead

represented himself.  Carey was sentenced to serve 3 ½ – 7 years in the New Hampshire State Prison.

Carey appealed his conviction, and the denial of his pretrial and post-conviction motions, to the New Hampshire Supreme Court ("NHSC").  Although he filed a pro se notice of appeal after his conviction, Carey was provided with court-appointed counsel for his appeal.  Carey's appellate attorney briefed two issues on appeal, although, Carey claims, thirty-four meritorious issues had been preserved at trial and listed in Carey's notice of appeal.  Carey moved to supplement his attorney's brief with a brief containing thirteen additional issues.  The NHSC granted Carey's motion in part, allowing Carey to file a pro se supplemental brief on four issues.  The NHSC affirmed Carey's conviction on October 12, 2007.

Carey now brings this petition, raising fifteen claims for relief:[1]

1. Carey's Fifth, Sixth, and Fourteenth Amendment rights to due process were violated by the prosecution's failure to provide him with requested exculpatory discovery in that they failed to turn over the

---

[1] The claims as identified herein will be considered to be the claims raised in the petition for all purposes.  If Carey objects to the identification of the claims here, he must do so by objecting to this Report and Recommendation or by properly moving to amend his petition.

       existence and identity of a witness to the alleged crime;

2. Carey's Fifth, Sixth, and Fourteenth Amendment rights to due process were violated by the prosecution's failure to provide him with requested exculpatory discovery regarding the complainant's history of psychological difficulties that impacted her credibility;

3. Carey's Fourth Amendment rights were violated when he was convicted by use of evidence that was seized pursuant to an unconstitutionally general warrant;

4. Carey's Sixth Amendment right to an impartial jury was denied when prejudicial and nonprobative evidence of Carey's private writings, that preceded the alleged offense by four years, was presented to the jury to demonstrate that the complainant was afraid of Carey, although that was not an element of the offense with which Carey was charged;

5. Carey's Sixth Amendment right to an impartial judge was denied when the trial judge failed to recuse himself, despite Carey having previously filed a complaint against the trial judge with the judicial conduct committee, and the trial judge having been a colleague of another judge who had been recused from Carey's case;

6. Carey's Sixth Amendment right to an impartial judge was denied when the trial judge denied Carey's motions without a hearing;

7. Carey's Sixth Amendment right to an impartial judge was denied when the trial judge made comments evincing bias against Carey during the trial;

8. Carey's Sixth Amendment right to an impartial judge was denied because the trial judge did not hear most of the testimony in the case due to his hearing impairment;

9.  Carey's Sixth Amendment right to an impartial judge was denied when the trial judge, at Carey's sentencing, evinced bias against Carey by allowing the complainant to testify from a position where she would not have to look at Carey, and because, after hinting at a probation-only disposition, sentenced Carey to a term of incarceration;

10. Carey was denied his Sixth Amendment right to the effective assistance of trial counsel when he was forced to discharge his court-appointed attorney and proceed pro se because the prosecution coerced Carey's attorney into hiding the existence and identity of a witness to the alleged crime;

11. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel because Carey's appellate attorney failed to make a meaningful effort to pursue Carey's rights on appeal when he failed to appeal a properly preserved Fourth Amendment claim;

12. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel because Carey's appellate attorney failed to challenge the misrepresentation of documents to the jury by prosecutors at trial;

13. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel when Carey's appellate attorney inaccurately portrayed the facts in his brief, in order to prejudice the NHSC against Carey;

14. Carey was denied his Fourteenth Amendment right to be convicted with sufficient evidence when the complainant in the case could not identify the item that Carey was alleged to have sent to her, when sending the items was the act that was alleged to have constituted an essential element of the stalking charge;

> 15. Carey was denied his Fourteenth Amendment right to due process when he was subjected to a malicious prosecution in which the prosecutors encouraged and abetted perjury by a witness and presented testimony of the complainant which was contrary to testimony the complainant had offered in an earlier trial.

## Discussion

### I. Custody and Exhaustion

To be eligible for habeas relief, Carey must show that he is both in custody and has exhausted all of his State court remedies, or that he is excused from exhausting those remedies because of an absence of available or effective State corrective processes. See 28 U.S.C. § 2254(a) & (b); see also Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing authority to explain the exhaustion principle). Carey is presently incarcerated and thus satisfies the custody requirement of the statute.

A petitioner's remedies in New Hampshire are exhausted when the State's highest court has had an opportunity to rule on the petitioner's claims. See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988) ("habeas corpus petitioner must have presented the substance of his federal constitutional claim[s] to the state appellate courts so that the state had the first chance to correct the claimed constitutional error"); see also Picard v.

6

Connor, 404 U.S. 270, 275 (1971) (requiring petitioner to have fairly presented the federal nature of his claims to the State courts to give them the first opportunity to remedy the claimed constitutional error).  "In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"  Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (internal citations omitted)).

In order to satisfy the requirement to "fairly present" his federal claim to the State courts, a petitioner must have "fairly presented" the claim to the State courts "in such a way that 'a reasonable jurist' would have recognized 'the existence of the federal question.'"  Josselyn v. Dennehy, 475 F.3d 1, 3 (1st Cir. 2007) (quoting Casella, 207 F.3d at 20).  A petitioner may fairly present a claim by: (1) citing a provision of the federal constitution, (2) presenting a federal constitutional claim in a manner that fairly alerts the State court to the federal nature of the claim, (3) citing federal constitutional precedents, (4)

claiming violation of a right specifically protected in the federal constitution, or, in some circumstances, (5) citing to State court decisions that rely on federal law or articulation of a State claim that is indistinguishable from one arising under federal law.  Clements, 485 F.3d at 162 (citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) and Nadworny v. Fair, 872 F.2d 1093, 1099-1100 (1st Cir. 1989)); cf. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988) (finding that simply reciting facts underlying a State claim, where those facts might support either a State or federal claim, without more, is clearly inadequate to constitute fair presentation of a federal claim to State court).

Carey has filed a number of documents attached to his petition.[2]  The only submitted documents that shed any light on whether not the claims raised here have been exhausted, are: (1) a single page of Carey's pro se notice of appeal, filed in the NHSC after Carey's trial, (2) "Defendant's Proposed Addendum to Appellate Defender Brief," filed by Carey in the NHSC, (3) "Motion To File 'Pro Se' Supplemental Brief," filed by Carey in the NHSC, (4) pages 4-6 of "Defendant's 'Pro Se' Supplemental

---

[2]All of the documents attached to Carey's petition will be considered to be part of the petition.  See Fed. R. Civ. P. 10(c) (requiring that written instruments attached to a pleading be construed as part of the pleading "for all purposes").

8

Brief," filed by Carey in the NHSC, and (5) "Defendant's Motion for Reconsideration," filed by Carey in the NHSC.

The submitted page of Carey's notice of appeal lists the following 34 questions to be considered by the NHSC[3]:

1. Did the Court err, as a matter of law, in denying Motion to Quash Defective Indictment?
2. Did the Court err, as a matter of law, in denying Defendant's Notice of Alibi?
3. Did the Court err in denying Defendant's Motion to Dismiss for Lack of Jurisdiction?
4. Did the Court err, as a matter of law, in denying Interlocutory Appeal of jurisdictional issue?
5. Did the Court err, as a matter of law, in denying Defendant's motions en masse without hearing?
6. Did the Court err, as a matter of law, in extending deadlines for State's motions to object?
7. Did the Court err, as a matter of law, in denying Defendant "Missing Witness" jury instruction on Winguay, as well as "Laudable Motive" jury instruction?
8. Did the Court err, as a matter of law, in denying Motion to Dismiss for Lack of Evidence?
9. Did the Court err, as a matter of law, in denying Defendant's Motion to Dismiss for Lack of Speedy Trial?
10. Did the Court err in denying In Camera Review of MPD Officer Steven Olson's personnel file?
11. Did the court err in denying Defendant's Motion for Psych. Eval. of State's Witness Kristi Eglody?
12. Did the Court err in denying Defendant's Motion for Additional Law Library Time?
13. Did the Court err in impermissibly coercing Defendant to choose amongst constitutional rights?
14. Was Defendant's constitutional right to Compulsory Process for Obtaining Witnesses violated?

---

[3]The notice of appeal form directs appellants to state "specific questions to be raised on appeal, expressed in terms and circumstances of the case, but without unnecessary detail."

9

15. Was Defendant's constitutional right to Confrontation violated?
16. Was Defendant's constitutional right to Effectiveness of Counsel violated?
17. Was Defendant's constitutional right to be free from Excessive Bail violated?
18. Was Defendant's constitutional right to be free from Cruel and Unusual Punishment violated?
19. Was Defendant's constitutional right to be free from Double Jeopardy violated?
20. Were Defendant's rights regarding res judicata and collateral estoppel violated?
21. Was Defendant's constitutional right to Due Process violated?
22. Was Defendant's constitutional right to Equal Protection violated?
23. Was Defendant's constitutional right to Fair Trial violated?
24. Was Defendant's constitutional right to an Impartial Judge violated?
25. Was Defendant's constitutional right to an Impartial Jury violated?
26. Was Defendant's constitutional right to be free from Malicious Prosecution violated?
27. Was Defendant's constitutional right to be free from Selective Prosecution violated?
28. Did the Court violate Defendant's N.H. Constitutional right to "present all proofs favorable?"
29. Did the Court violate N.H. Rules of Evidence 402 and 403?
30. Did the Court err in making jury aware of Defendant's incarceration at jury selection?
31. Did the Court err in allowing into trial Prosecution's "evidence of Defendant's" prior bad acts but NOT allowing in Defendant's documentation of criminal acts committed by the [Manchester Police Department and the Merrimack County Attorney's Office]?
32. Did the Court err in trying Defendant for a FELONY with Motions for New Trial STILL pending on the PRIOR misdemeanor conviction WHICH ALLOWED ENHANCEMENT OF INSTANT CHARGE TO FELONY?

    33. Did the Court err, as a matter of law, in denying Defendant's Motion to Set Aside Jury Verdict and Redirect Verdict for the Defendant?
    34. Did the Court err, as a matter of law, in denying Defendant's Motion for New Trial?

"Defendant's Proposed Addendum to Appellate Defender Brief," sets out the federal constitutional basis for Carey's claim that evidence at trial had been unconstitutionally seized from him based on a violation of the Fourth Amendment. Carey's "Motion To File 'Pro Se' Supplemental Brief" sets out an argument in support of Carey's right to an impartial judge, citing a State case that relies on federal caselaw, to wit, State v. Ayer, 150 N.H. 14, 35-36, 834 A.3d 277, 296-96 (2003), which cites federal cases to explain when recusal by a trial judge is or is not warranted in order to protect the impartiality of the trial court. That motion also specifically presents a Sixth Amendment argument in support of Carey's claim that he was denied the right to an impartial jury. "Defendant's Pro Se Supplemental Brief," containing Carey's argument objecting to the trial court's denial of Carey's subpoenas, denial of a psychiatric evaluation of the complaint, and denial of defense witnesses, cited the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and also raised a federal constitutional argument

concerning the prosecution's alleged failure to provide Carey with exculpatory discovery materials in a timely fashion.

In "Defendant's Motion For Reconsideration," Carey argues that his appellate counsel failed to provide him with constitutionally sufficient representation.  The pleading, however, did not specifically cite the federal or State constitutional right to the effective assistance of counsel, but rather described appellate counsel's efforts on Carey's behalf as "unconstitutionally" weak.

Carey has also submitted portions of the trial transcript which indicate that, at trial, Carey asserted his federal constitutional right to confront the witnesses against him, and his federal due process right to present exculpatory evidence. It can be presumed that the NHSC, in conducting it's review of the trial in this case, was aware of the contents of the trial transcripts.

    A.   Exhausted Claims

Comparing the fifteen constitutional claims raised in this petition with what Carey has demonstrated that he filed in the NHSC, I find that Carey has clearly and specifically exhausted the claims in this petition numbered 1, 2, 4 & 5 by arguing the

specific constitutional provisions raised here to the NHSC, either in his motion seeking permission to file a pro se supplemental brief, or in the pro se supplemental brief itself. Accordingly, I find that those four claims have been exhausted.

As to the claims numbered 7 – 13 and 15, Carey, in his notice of appeal, listed these claims as "constitutional" issues, but did not specify, at least in the documents provided to the Court thus far, whether the constitutional violations were federal or State constitutional violations, or, if federal, what specific constitutional provision he was invoking.  It is not clear that this was the only information presented to the NHSC for these claims.  It may well be that the notice of appeal or other pleadings filed clarified that issue.  At this time, exhaustion of claims 7–13 and 15 is, at best weakly demonstrated. However, construing the pleadings liberally and in the light most favorable to the petitioner, and applying the standard set out above for "fair presentation" of an issue to the NHSC, I find that Carey has alleged the minimum facts necessary to show that he presented his constitutional issues to that Court in such a way that it is "probable that a reasonable jurist would have ben alerted to the existence of the federal question" posed.  <u>See</u>

Clements, 485 F.3d at 162. I find, therefore, that Carey has demonstrated that claims 7-13 and 15 have been exhausted for purposes of preliminary review.

### B. Unexhausted Claims

Carey has failed to allege sufficient facts, however, to demonstrate exhaustion of two of his claims. Claims 6 and 14 were both raised in the notice of appeal, but not as constitutional issues. Nothing in Carey's federal habeas petition demonstrates that the NHSC has been alerted to the federal nature of these claims. Accordingly, I will give Carey the opportunity to amend his complaint to either demonstrate that claims 6 and 14 have been exhausted or to voluntarily dismiss claims 6 and 14 from this action.

### C. Mixed Petition and Stay

"[T]he exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to <u>each and every claim</u> contained within the application." Adelson, 131 F.3d at 261 (emphasis added). As Carey's petition contains both exhausted and unexhausted claims, if he were to press his petition without first exhausting all of

the claims contained therein, I would have to recommend dismissal of the entire petition. See <u>Nowaczyk v. Warden, N.H. State Prison</u>, 299 F.3d 69, 75 (1st Cir. 2002) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 513-21 (1982)). Where a petition contains both exhausted and unexhausted claims, the proper course of action is to stay the petition pending the exhaustion of all of the claims contained therein. See <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005) (a district court should stay a mixed petition containing both exhausted and unexhausted claims if the petitioner "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."). Accordingly, to pursue any of the claims raised in this Court, Carey must demonstrate exhaustion of claims 6 and 14.

If Carey has not yet exhausted claims 6 and 14, including the federal nature of those claims, I will allow him the opportunity to return to the State court to exhaust those claims. To that end, I will direct that this matter be stayed in order to allow Carey the opportunity to return to the State courts to complete exhaustion, if Carey notifies the Court within thirty

days of the date of this Order that he will return to the State courts to complete exhaustion of those claims.

It should be noted that Carey has the option of foregoing his unexhausted claims and requesting that this Court proceed promptly with consideration of his exhausted claims. Carey should be advised, however, that if he does forego any of his claims, he will likely waive ever having the foregone claims considered by this Court due to the prohibition against second or successive federal habeas petitions. See 28 U.S.C. § 2244; Pratt v. United States, 129 F.3d 54, 56-58 (1st Cir. 1997).

II. Fourth Amendment Claim

Carey raises one claim, number 3 above, that alleges that his conviction was unconstitutional because it was obtained by use of evidence that was seized in violation of Carey's Fourth Amendment rights. Where State courts have provided an opportunity to a federal habeas petitioner for full and fair litigation of a Fourth Amendment claim, the petitioner cannot obtain habeas corpus relief on the grounds that evidence obtained as a result of an unconstitutional search or seizure was introduced at his trial. See Stone v. Powell, 428 U.S. 465, 482 (1976); Sanna v. DiPaolo, 265 F.3d 1, 8 (1st Cir. 2001) ("a

16

federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims."). Carey alleges in claim 3 that his Fourth Amendment rights were violated when an impermissibly general search warrant was improperly issued, the State courts failed to suppress the evidence, and the evidence seized as a result of the search conducted pursuant to that warrant was used to incriminate him at trial. Carey's petition indicates that he was provided with the opportunity to litigate his Fourth Amendment issues in the State courts and that he did, in fact, litigate the Fourth Amendment issue. Accordingly, I find that under Stone and Sanna, Carey's Fourth Amendment claim, numbered 3 in this petition, is not cognizable in a federal habeas action.

When Carey amends his petition to demonstrate exhaustion of claims 6 and 14, he should, at that time, voluntarily dismiss the Fourth Amendment claim. If he does not seek voluntary dismissal, I will recommend dismissal of this claim when the amended petition comes before me for preliminary review.

## Conclusion

Carey is ordered to either: (1) forego his currently unexhausted claims, (2) return to the State courts to exhaust his

claims, and then (3) to amend his petition to demonstrate exhaustion of his claims.  Specifically, Carey is directed to:

    1.   Advise this Court within thirty (30) days of the date of this Order if he chooses to forego his unexhausted claims.  If the Court receives this notice, the stay will be lifted and the exhausted claims promptly considered.

    2.   If Carey intends to return to the State courts to exhaust his unexhausted claims so that they may be considered here, he must so notify this court, and commence his State court action, within thirty (30) days of the date of this Order.

    3.   Carey must notify this Court in writing of the status of the State court proceedings every ninety (90) days.

    4.   When the claims are fully exhausted in the State courts, Carey must, within thirty (30) days of receiving the final NHSC decision, notify this Court that the State court litigation is concluded and provide this Court with the documentation of exhaustion of his claims at that time.  To satisfy this Order, Carey must provide this Court with complete copies of documents filed in the Superior Courts and the NHSC, showing that each of the presently unexhausted claims, including the federal nature of those claims, has been raised and exhausted

in those Courts.  Carey should also provide this Court with complete copies of any orders or opinions issued by the State courts relative to these matters that have not previously been submitted to this Court.

5.   Should Carey fail to amend his complaint to demonstrate that he has exhausted his State court remedies for each of the grounds presented, or otherwise fails to comply with this Order, the petition may be dismissed for failure to demonstrate exhaustion.[4]  See 28 U.S.C. § 2254(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:     March 13, 2008

cc:       William J. Carey, pro se

---

[4]If this petition were to be dismissed for failing to demonstrate exhaustion, the dismissal would be without prejudice as it would be procedural and not based on the merits of Carey's claims. See Slack v. McDaniel, 529 U.S. 473 (2000).