UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>William J. Carey</u>,
     Petitioner

     v.                                     Civil No. 07-cv-380-SM
                                           Opinion No. 2009 DNH 079
<u>Warden, Northern New Hampshire</u>
<u>Correctional Facility</u>,
     Respondent

## <u>O R D E R</u>

Following a jury trial in state court, petitioner, William Carey, was convicted of one count of stalking.  Carey represented himself at trial, but was assisted by stand-by counsel.  Because this was not the first time Carey had been convicted of stalking, he was subject to an enhanced penalty under state law. Accordingly, the trial court sentenced him to serve not less than three and one-half years, and not more than seven years, in prison.  The New Hampshire Supreme Court affirmed Carey's conviction and sentence on appeal.  After his motion for reconsideration was denied, Carey filed a petition seeking federal habeas corpus relief in this court.

The State moves for summary judgment, asserting that, as a matter of law, Carey is not entitled to the relief he seeks.  For the reasons discussed below, the State's motion is granted.

## Standard of Review

I.   <u>Deferential Review of State Court Determinations</u>.

Federal constitutional claims advanced in a habeas petition,
that were fairly and recognizably presented to, but not addressed
by, a state's highest court, are subject to de novo review.   <u>See,
e.g.</u>, <u>Gruning v. Dipaolo</u>, 311 F.3d 69, 71 (1st Cir. 2002);
<u>Fortini v. Murphy</u>, 257 F.3d 39, 47 (1st Cir. 2001).   Importantly,
however, the Anti-Terrorism and Effective Death Penalty Act of
1996 ("AEDPA"), 28 U.S.C. § 2254(d), substantially limits the
power to grant federal habeas relief to a state prisoner with
respect to claims adjudicated on the merits in state court.   A
federal court may not disturb a state conviction unless the state
court's adjudication "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."   28 U.S.C. §
2254(d)(2).   Alternatively, habeas relief may be granted if the
state court's resolution of the issues before it "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).
<u>See also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 399 (2000).

With respect to claims brought pursuant to section
2254(d)(1), the United States Supreme Court has explained the

distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412–13.  The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> The most important point is that an unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 410–11 (emphasis in original).

    Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is

"contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).


II.  Procedural Default.

The procedural default doctrine provides that a federal court will not consider a claim for habeas relief that was rejected by a state court for failure to comply with that court's procedural requirements, Coleman v. Thompson, 501 U.S. 722, 732 (1991), provided those procedural requirements amount to "a firmly established and regularly followed state practice," Ford v. Georgia, 498 U.S. 411, 423–24 (1991) (internal quotation marks omitted).  As the court of appeals has observed, a claim for habeas relief is procedurally defaulted in either of two situations.

> First, a claim is procedurally defaulted if the state court has denied relief on that claim on independent and adequate state procedural grounds.  Second, a claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred.

Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) (citations omitted).  The doctrine applies whether the procedural default

occurred at trial, on direct appeal, or in the context of a collateral proceeding, and is "grounded in concerns of comity and federalism." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citation omitted).  Because a petitioner who has failed to meet a state's procedural requirements for presenting his federal claims has deprived the state court of an opportunity to address those claims in the first instance, a federal court will consider them only if the petitioner demonstrates cause for his state-court default and prejudice resulting therefrom.  Id.

     With those principles in mind, the court turns to Carey's petition and the State's motion for summary judgment.

### Background

     Although the parties disagree as to their legal significance, the material facts are largely undisputed.  They are set forth in detail in the State's memorandum (document no. 23-2) and, therefore, need only be briefly recounted.

     Following a three-day jury trial at which he represented himself, Carey was convicted of one count of stalking.  The court denied his motion to set aside the verdict, along with his motion for a new trial.  He was sentenced to serve not less than three and one-half years, but not more than seven years, in prison.

Still acting in a pro se capacity, Carey filed a notice of appeal ("NOA") with the New Hampshire Supreme Court, in which he identified 34 alleged violations of his constitutional rights. According to Carey, those issues were "painstakingly preserved [for appellate review] through the filing of approximately 100 motions." Habeas Petition, Attachment 4(c), Motion to File "Pro Se" Supplemental Brief, at para. 1.

Ultimately, the court appointed counsel to represent Carey on appeal. Of the 34 issues identified in Carey's NOA, appellate counsel pursued only two: (1) whether Carey opened the door to the introduction of various writings authored by Carey, including his "last will and testament," which implied an intent to kill his stalking victim; and (2) whether the trial court erred in denying Carey's motion to dismiss for lack of sufficient evidence on a jurisdictional element of the crime. Plainly displeased with counsel's decision to pursue only two issues on appeal, Carey sought leave of court to file a supplemental pro se brief, in which he "voluntarily narrowed the issues down [from 34] to thirteen." Habeas Petition at 3. That motion was granted, in part, and Carey was permitted to brief four additional issues.

The New Hampshire Supreme Court addressed the two issues briefed by Carey's appellate counsel on the merits and concluded

6

that the trial court did not err in admitting the challenged
evidence, nor did it err in rejecting Carey's jurisdictional
argument.  Regarding the issues raised in Carey's pro se brief,
the court ruled as follows:

> Finally, as to the arguments raised by the defendant in
> his pro se supplemental brief, he contends that various
> rulings of the trial court violated his constitutional
> rights.  The defendant, however, does not develop his
> arguments and merely claims that particular adverse
> rulings by the trial court violated certain of his
> rights.  Because, in the realm of appellate review, a
> mere laundry list of complaints regarding adverse
> rulings by the trial court, without developed legal
> argument, is insufficient to warrant judicial review,
> we decline to address the defendant's constitutional
> arguments.

State v. Carey, slip op. at 2 (N.H. Oct. 12, 2007) (citation
omitted).  The court denied Carey's subsequently-filed motion to
reconsider.

     In November of 2007, Carey filed a petition for writ of
habeas corpus with this court.  Following a preliminary review of
the petition, the Magistrate Judge concluded that Carey raised 15
claims and directed him to amend his petition to either
demonstrate exhaustion of the apparently unexhausted claims, or
choose to forego them.  In response, Carey amended his petition
and voluntarily dismissed one claim (claim 3), and elected to
forego two unexhausted claims (claims 6 and 14).  Accordingly,
the Magistrate Judge concluded that his petition presented 12

7

facially valid claims for review.  They are as follows (as described by the Magistrate Judge and as numbered in the original Report and Recommendation):

1.  Carey's Fifth, Sixth, and Fourteenth Amendment rights to due process were violated by the prosecution's failure to provide him with requested exculpatory discovery in that they failed to turn over the existence and identity of a witness to the alleged crime;

2.  Carey's Fifth, Sixth, and Fourteenth Amendment rights to due process were violated by the prosecution's failure to provide him with requested exculpatory discovery regarding the complainant's history of psychological difficulties that impacted her credibility;

4.  Carey's Sixth Amendment right to an impartial jury was denied when prejudicial and nonprobative evidence of Carey's private writings, that preceded the alleged offense by four years, was presented to the jury to demonstrate that the complainant was afraid of Carey, although that was not an element of the offense with which Carey was charged;

5.  Carey's Sixth Amendment right to an impartial judge was denied when the trial judge failed to recuse himself, despite Carey having previously filed a complaint against the trial judge with the judicial conduct committee, and the trial judge having been a colleague of another judge who had been recused from Carey's case;

7.  Carey's Sixth Amendment right to an impartial judge was denied when the trial judge made comments evincing bias against Carey during the trial;

8.  Carey's Sixth Amendment right to an impartial judge was denied because the trial judge did not hear most of the testimony in the case due to his hearing impairment;

9.  Carey's Sixth Amendment right to an impartial judge was denied when the trial judge, at Carey's sentencing, evinced bias against Carey by allowing the complainant

to testify from a position where she would not have to look at Carey, and because, after hinting at a probation-only disposition, sentenced Carey to a term of incarceration;

10. Carey was denied his Sixth Amendment right to the effective assistance of trial counsel when he was forced to discharge his court-appointed attorney and proceed pro se because the prosecution coerced Carey's attorney into hiding the existence and identity of a witness to the alleged crime;

11. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel because Carey's appellate attorney failed to make a meaningful effort to pursue Carey's rights on appeal when he failed to appeal a properly preserved Fourth Amendment claim;

12. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel because Carey's appellate attorney failed to challenge the misrepresentation of documents to the jury by prosecutors at trial;

13. Carey was denied his Sixth Amendment right to the effective assistance of appellate counsel when Carey's appellate attorney inaccurately portrayed the facts in his brief, in order to prejudice the NHSC against Carey;

15. Carey was denied his Fourteenth Amendment right to due process when he was subjected to a malicious prosecution in which the prosecutors encouraged and abetted perjury by a witness and presented testimony of the complainant which was contrary to testimony the complainant had offered in an earlier trial.

Report and Recommendation (March 13, 2008) (document no. 9).  <u>See</u>

<u>also</u> Report and Recommendation (Aug. 14, 2008) (document no. 15).

**Discussion**

I.  <u>Claims Addressed on Direct Appeal</u>.

Of all the claims raised in Carey's habeas petition, only one was addressed on the merits by the New Hampshire Supreme Court in his direct appeal.  In claim 4 of his petition, Carey asserts that his Sixth Amendment right to an impartial jury was violated as a result of an erroneous evidentiary ruling by the trial court.  Specifically, Carey says his rights were violated when the prosecution was permitted to introduce what he considers "prejudicial and non-probative" evidence of his private writings, including a hand-drawn map of his victim's neighborhood, as well as his so-called "last will and testament" (in which he referred to his victim as his "wife" and spoke of his plan to "take her to heaven with me.").

This issue was briefed on appeal by Carey's appointed appellate counsel and the New Hampshire Supreme Court considered (and rejected) it on the merits.  That court permissibly concluded that the trial court acted within its considerable discretion in permitting the introduction of the challenged evidence after Carey, through his cross-examination of his victim, left the jury with the distinct impression that she had absolutely no reason to fear him.  And, Carey has failed to point to any precedent suggesting that the New Hampshire Supreme

10

Court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  As to that claim, then, Carey is not entitled to habeas relief.  <u>See</u> <u>generally</u> 28 U.S.C. § 2254(d)(1).


II.  <u>Procedurally Barred Claims</u>.

     The State asserts that claims 1 (undisclosed witness), 2 (victim's psychological evaluation), and 15 (malicious prosecution) of Carey's habeas petition are procedurally barred because Carey failed to adequately brief those claims in his direct appeal and, for that reason, the New Hampshire Supreme Court refused to address them – a decision that rests upon an independent and adequate state law ground.  The court agrees.


     The first two claims advanced in Carey's habeas petition were among those identified (but inadequately briefed) in the pro se filing the New Hampshire Supreme Court allowed him to submit in his direct appeal.  As noted above, the court declined to rule on the merits of those claims, concluding that Carey failed to adequately brief them and, therefore, forfeited them.  In other words, the New Hampshire Supreme Court rejected those claims "for failure to comply with that court's procedural requirements." <u>Coleman</u>, 501 U.S. at 732.  Consequently, the denial of relief as to those claims rested upon an independent and adequate state

11

procedural rule.  See, e.g., Olszewski v. Spencer, 466 F.3d 47, 62 (1st Cir. 2006).  And, that procedural rule is firmly established and regularly followed by the state court.  See State v. Ayer, 150 N.H. 14, 34 (2003); State v. Blackmer, 149 N.H. 47, 49 (2003); State v. Chick, 141 N.H. 503, 504 (1996).  Because Carey has demonstrated neither cause for, nor prejudice from, his failure to comply with the State's procedural rule, it necessarily follows that, as to claims 1 and 2 of his petition, he is not entitled to federal habeas relief.

Claim 15 of Carey's petition is procedurally barred for a slightly different reason.  That claim (i.e., that he was the subject of a malicious prosecution) was raised in his notice of appeal ("NOA") as issue number 26.  Habeas Petition, Attachment 2(c).  But, after appellate counsel elected to brief only two of the 34 issues raised in the NOA and Carey sought leave to file a supplemental pro se brief, he did not seek to brief that issue. See Habeas Petition, Attachment 4(a), Motion to File "Pro Se" Supplemental Brief, para. 11.  Having raised the issue in his NOA, but having failed to brief it or develop his argument in any way, Carey is, under New Hampshire's procedural rules, deemed to have waived that claim.  In fact, Carey concedes as much in his habeas petition, noting that he "voluntarily narrowed the issues [on appeal] down to thirteen."  Habeas Petition at 3.  Like

12

claims 1 and 2 of Carey's habeas petition, claim 15 is, then, procedurally barred.

The same is true with regard to claim 10 in Carey's petition (ineffective assistance of trial counsel; item number 16 in his NOA).  Carey raised that issue in his NOA but appellate counsel did not brief it, nor did Carey seek leave to include it in his supplemental pro se brief.  <u>See</u> Motion to File "Pro Se" Supplemental Brief, para. 11.  That claim is, then, deemed waived under state law and is procedurally defaulted.

Similarly, the first of Carey's three claims that he was denied effective representation by appellate counsel is also procedurally defaulted.  In that claim, Carey asserts that his attorney failed to appeal a properly preserved Fourth Amendment issue (claim 11).  Carey refers to evidence introduced at trial that was obtained when police officers, acting pursuant to a search warrant, obtained documents located at Carey's mother's home.  Importantly, however, it appears that Carey never challenged that search in the trial court.  <u>See</u> Habeas Petition, Encl. 16 (letter from Appellate Defender Theodore Lothstein).  Consequently, it was <u>Carey</u> (representing himself at trial) who failed to preserve the issue for appellate review.  So, even if appellate counsel thought it appropriate to pursue that issue

before the New Hampshire Supreme Court, he would not have been permitted to do so.  See, e.g., State v. Martin, 145 N.H. 313, 315 (2000); State v. Jackson, 144 N.H. 115, 117–18 (1999) (citing N.H. Supr. Ct. R. 16(c)(b) and State v. Dewitt, 143 N.H. 24, 29 (1998)).  Moreover, even if Carey had preserved the issue for appellate review, he failed to seek to include it in the issues addressed in his pro se brief to the state supreme court. Consequently, he waived that issue and it is now procedurally barred.

Finally, the same is true with regard to Carey's second claim regarding ineffective assistance of appellate counsel, i.e. that, on appeal, counsel failed to challenge the introduction of certain documents at trial (claim 12).  In preparing his NOA (and again, when preparing his motion seeking leave to file a pro se supplemental appellate brief), Carey neglected to raise that particular claim.  As Carey was, no doubt, warned on many occasions, there are risks associated with proceeding pro se in a criminal matter.  This, plainly, is one of them.  By failing to raise and adequately brief the issue before the New Hampshire Supreme Court, Carey is deemed to have waived it.  That claim is, then, procedurally defaulted.

14

In summary, claims 1, 2, 10, 11, 12, and 15 of Carey's
habeas corpus petition are procedurally defaulted.  And, because
Carey has not attempted to show cause for, and prejudice stemming
from, those procedural defaults, this court is precluded from
addressing the merits of those claims.

III. <u>Claims Not Addressed on Direct Appeal</u>.

Several of the claims Carey advances in his habeas petition
<u>were</u> set forth in his NOA and his motion for leave to file a
supplemental brief, but the state supreme court did not permit
him to brief them.[1]  Consequently, they were never addressed on
the merits and, as a result, this court will review those issues
de novo.  <u>See</u> <u>Gruning</u>, 311 F.3d at 71; <u>Fortini</u>, 257 F.3d at 47.

A.   <u>Right to an Impartial Judge</u>.

Carey asserts that he was denied his Sixth Amendment right
to a fair and impartial trial judge because:

1.   the trial judge failed to recuse himself,
     despite knowing that Carey had filed a
     complaint against him with the judicial
     conduct committee (claim 5);

---

[1]   Giving Carey the benefit of the doubt, the court has
assumed that those issues (and, in particular, their federal
constitutional dimensions) were fairly and recognizably presented
to the state Supreme Court – a generous construction of his
notice of appeal.  <u>See</u> Habeas Petition, Attachment 2(c).

15

2.   the trial judge displayed "extreme
     partiality" towards the State's principal
     witness (i.e., Carey's victim) and made
     "extremely biased" comments to Carey (claim
     7);

3.   the trial judge wears a hearing aid and,
     according to Carey, "actually misse[d] much
     of the testimony" (claim 8); and

4.   at Carey's sentencing, the trial judge again
     displayed his bias against Carey, and his
     favoritism toward his victim, by allowing the
     victim to testify from a position where she
     would not have to look directly at Carey
     (claim 9).

None of those issues has any merit.


     Regarding Carey's claim that the trial judge should have

recused himself because Carey filed a judicial conduct complaint

against him, there is no evidence that Carey ever filed such a

complaint.  The only "evidence" upon which Carey relies in

support of this claim is language the court used in one of its

pre-trial orders.  In that order, the court explained that if

Carey believed the court had erred in one of its prior decisions,

"the defendant's remedy, if he thinks this ruling was incorrect,

is to appeal, not to file a motion to recuse or a judicial

conduct complaint."  Habeas Petition, Attachment 10.  But, even

assuming Carey did file a judicial conduct complaint against the

presiding trial judge, that fact, standing alone, is plainly

insufficient to compel the judge to recuse.  See, e.g., Baldi v.

Brown, 2007 DNH 048 at 3 n.2 (D.N.H. April 10, 2007) ("the mere
fact that a civil litigant files frivolous complaints against a
presiding judge arising from the judge's work does not require
recusal.  Otherwise, the court system would be at the mercy of
judge-shopping litigants motivated to file frivolous complaints
merely to serve improper purposes.") (citations omitted).


     Carey's remaining claims regarding the trial judge's alleged
personal bias against him (and in favor of Carey's victim)
(claims 7 and 9) and that he was somehow deprived of an impartial
judge by virtue of the trial judge's alleged hearing loss (claim
8) are entirely unsupported, both factually and legally.  Carey
has failed to point to any evidence sufficient to support habeas
relief on any of those claims.


     B.   Ineffective Assistance of Appellate Counsel.

     Finally, Carey asserts that he was denied effective
assistance of appellate counsel when his appellate attorney
inaccurately portrayed the facts of the case in his brief, in
what Carey says was an intentional effort to prejudice the New
Hampshire Supreme Court against him (claim 13).  Specifically,
Carey says his appellate counsel "changed [the victim's]
completely unfounded assertion that Mr. Carey had 'tried the
doors' of her home over a decade prior to, 'she believed Carey

17

had broken into her home.'"  Habeas Petition at 7 (referencing Exhibit A, Brief for the Defendant to the N.H. Supreme Court, at 3-4).  In short, Carey claims his constitutional rights were violated when his appellate counsel inaccurately summarized an aspect of the victim's trial testimony.[2]

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must "show, by a preponderance of the evidence, that [his or her] trial counsel's conduct fell below the standard of reasonably effective assistance and that counsel's errors prejudiced the defense."  Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington,

---

[2]     The testimony at issue involves the victim's description of an incident during which Carey's vehicle was seen near her home:

> Your car was found – was seen outside of my house.  A neighbor came with a license plate number and said that the person who got out of the car was at my door trying the doors.  I also found a screen was off of my screen or – excuse me, my cellar window and another neighbor had seen you looking in my garage windows so I had that license plate number.  That's when I called the police and had the license plate number looked up and it was a car registered to William Carey and that's when I called the police and asked them to speak with you.  I didn't want to cause any trouble.  I just wanted you to leave me alone.

Trial Transcript, Volume I, page 108.  Carey complains that his appellate counsel mis-characterized that testimony by stating (erroneously) that the victim "believed Carey had broken into her home."  Habeas Petition, Exhibit A, Brief for Defendant to the N.H. Supreme Court, at 3-4.

466 U.S. 668, 687 (1984)).  See also Cofske v. United States, 290
F.3d 437 (1st Cir. 2002).  In assessing the quality of counsel's
representation, the court employs a highly deferential standard
of review and "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance; that is, the [petitioner] must overcome the
presumption that, under the circumstances, the challenged action
might be considered sound trial strategy."  Strickland, 466 U.S.
at 689 (citation and internal quotation marks omitted).

     In other words, to satisfy the first prong of the Strickland
test, Carey must demonstrate that his counsel made errors that
were "so serious that counsel was not functioning as the
'counsel' guaranteed the defendant by the Sixth Amendment."
Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting
Strickland, 466 U.S. at 687)).  And, to satisfy the second prong
of the Strickland test, Carey must show "actual prejudice."  As
the court of appeals has observed, "prejudice exists in a
particular case when there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different."  Gonzalez-Soberal, 244 F.3d at 278
(citation and internal quotation marks omitted).  A reasonable
probability is "one sufficient to undermine confidence in the
outcome."  Id. (citation omitted).

To be sure, appellate counsel's characterization of the
victim's testimony was not precisely accurate.   Nevertheless,
Carey's ineffective assistance claim falls well short of one that
would entitle him to habeas relief.   First, the minor error in
the manner in which appellate counsel described the events of
that one day is inconsequential – particularly since Carey
pointed out appellate counsel's error in a filing he subsequently
submitted to the New Hampshire Supreme Court, making it doubtful
that the justices relied in any manner on counsel's
characterization.   <u>See</u> Habeas Petition, Attachment 3(b) at
para. 5.   Moreover, Carey has failed to articulate how appellate
counsel's error might conceivably constitute constitutionally
deficient legal representation, nor has he identified how
appellate counsel's minor mis-characterization of the background
facts could possibly be viewed as prejudicing his case.   The
evidence of Carey's guilt was convincing and a jury properly
found him guilty beyond a reasonable doubt, and it cannot be said
that but for appellate counsel's misstatement a different result
on appeal likely would have resulted.   As to that claim, too,
Carey is not entitled to habeas relief.


## Conclusion

For the foregoing reasons, as well as those set forth in the
State's legal memorandum (document no. 23-2), the State's motion

for summary judgment as to all claims advanced in Carey's habeas corpus petition is granted.  Carey's motion to strike (document no. 26) is denied.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

  **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 10, 2009

cc: William J. Carey, <u>pro</u> <u>se</u>
   Stephen D. Fuller, Esq.
   Susan P. McGinnis, Esq.
   Elizabeth C. Woodcock, Esq.